IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARCOS SANTIAGO, | : |
| Plaintiff, | : CIVIL NO. 4:CV-08-0102 |
| v. | : (Judge McClure) |
| ASSISTANT WARDEN EY, *et al.*, | : |
| Defendants. | : |

**MEMORANDUM**

April 10, 2009

Plaintiff Marcos Santiago ("Plaintiff" or "Santiago"), an inmate confined at the United States Penitentiary at Allenwood ("USP Allenwood") in White Deer, Pennsylvania, initiated this *pro se* civil rights action pursuant to the provisions of 28 U.S.C. § 1331. Presently pending are Plaintiff's motion for preliminary injunction (Record document no. 48), motion to expedite his motion for preliminary injunction (Record document no. 64), and motion for order (Record document no. 67). These motions are disposed of below.

**I.    Plaintiff's Motion for Preliminary Injunction**

In his motion, Plaintiff asserts that he has been suffering from pain in his head and neck for about two years that causes him to have to lie down and restricts his ability to stand or walk for long periods of time. (*See* Record document no. 48 ¶¶ 1-

3.) Plaintiff states that he had a Magnetic Resonance Angiography ("MRA") test on April 4, 2007 and that the results, which are attached to his Complaint in this action as Exhibit O, revealed a potential abnormality. (*See id.* ¶ 4.) He claims that when the doctor who performed the MRA, Dr. Carrington, saw the abnormality, he stated, "It's pretty big!" (*See id.*) Plaintiff also states that the report from his MRI, which is attached to his Complaint as Exhibit Z, revealed that Plaintiff had "sclerosis in his mastoid aircells." (*See id.* ¶ 5.) Plaintiff alleges that he continues to suffer from "extremely bothersome and crippling pain in his head" even after he was prescribed sinus pills and nasal spray for the inflammation in his sinuses that was detected by the MRI. (*See id.* ¶¶ 5-6.) He claims that he has complained countless times to "the Warden, DeWald, etc." about this pain and his resulting inability to stand for long periods of time, but they have refused to provide treatment. (*See id.* ¶ 7.)

Plaintiff states that on May 6, 2008, his PA put in a request for him to be evaluated by an Ear, Nose, and Throat ("ENT") specialist, but that he still had not seen the ENT specialist.[1] (*See id.* 8.) As relief, he requests that this Court direct that an independent, outside doctor evaluate Plaintiff and "examine all the test results in order to explain what exactly is sclerosis in his mastoid aircells, and how big is it."

---

[1] Plaintiff's motion was dated July 29, 2008 and filed on August 11, 2008.

(*See id.* ¶ 9.)

Federal Rule of Civil Procedure 65 governs the granting of injunctive relief such as temporary restraining orders and preliminary injunctions. It is well-established that injunctive relief is an "extraordinary remedy . . . ." *See, e.g. Chez Sez III Corp. v. Twp. of Union*, 945 F.2d 628, 634 (3d Cir. 1991) (citation and internal quotations omitted). As such, preliminary injunctive relief should issue only in limited circumstances. *See American Tel. and Tel. Co. v. Winback and Conserve Program, Inc.*, 42 F.3d 1421, 1426-27 (3d Cir. 1994), *cert. denied*, 514 U.S. 1103 (1995). Moreover, issuance of such relief is at the discretion of the trial judge. *Orson, Inc. v. Miramax Film Corp.,* 836 F. Supp. 309, 311 (E.D. Pa. 1993). The Third Circuit Court of Appeals has described the standard of review applicable to requests for preliminary injunctions as follows:

> [t]he standard for evaluating a motion for preliminary injunction is a four-part inquiry as to: (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest.

*United States v. Bell*, 414 F.3d 474, 478 n.4 (3d Cir. 2005) (citing *ACLU of N.J. v. Black Horse Pike Reg'l Bd. of Educ.,* 84 F.3d 1471, 1477 n.2 (3d Cir. 1996) (*en*

*banc*)).

Perhaps the most important prerequisite for the issuance of a preliminary injunction is a demonstration that, if it is not granted, the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered. *See Continental Group, Inc. v. Amoco Chems. Corp.,* 614 F.2d 351, 356 (3d Cir. 1980). Irreparable injury is "potential harm which cannot be redressed by a legal or equitable remedy following a trial." *Instant Air Freight Co. v. C.F. Air Freight, Inc.,* 882 F.2d 797, 801 (3d Cir. 1989). A court may not grant preliminary injunctive relief unless "[t]he preliminary injunction [is] the only way of protecting the plaintiff from harm." *Id.* The relevant inquiry is whether the party moving for the injunctive relief is in danger of suffering the irreparable harm at the time the preliminary injunctive relief is to be issued. *Id.* Speculative injury does not constitute a showing of irreparable harm. *Continental*, 614 F.2d at 359; *see also Public Serv. Co. of N.H. v. Town of West Newbury*, 835 F.2d 380, 383 (1st Cir. 1987).

In the instant case, Plaintiff has failed to satisfy the four-factor test set forth above. Moreover, Plaintiff has obtained the relief he sought. Defendants state in their opposition brief that, on August 27, 2008, Plaintiff was taken to an outside medical facility to see an ENT specialist. (*See* Record document no. 54 at 7; Record document

no. 54-2, Dr. Kevin Pigos decl., at 6¶ 19.)  Following an examination, the ENT specialist determined that Plaintiff has chronic maxillary and ethmoidal sinusitis and a deviated septum.  (*Id.*)  The specialist recommended a different antibiotic for three weeks, oral steroids (prednisone) for twelve days, and a follow up CT scan after treatment is completed.  (*Id.*)  Plaintiff also was scheduled to return to see the specialist after the prescribed course of treatment had been completed.  (*Id.*)  Because Plaintiff obtained the relief he sought, which was to see an outside specialist to evaluate his sinus condition, his motion will be denied as moot.[2]

## II.     **Plaintiff's Motion to Expedite his Motion for Preliminary Injunction**

In his motion, Plaintiff requests that this Court direct Defendants to take

---

[2]In his reply brief, Plaintiff notes that, in his Report prepared after his August 27, 2008 examination of Plaintiff, the ENT specialist, Dr. Bruce, stated that he made, "Posterior neck findings (tenderness), but likely unrelated to the sinus."  (Record document no. 58 at 5; Ex. B, 8/27/08 Report of Dr. Bruce.)  Plaintiff argues that this finding is proof that he suffers from some condition other than sinus inflammation and that, as a result, his motion for preliminary injunction is not moot.  (*See id.* at 5-6.)

Assuming *arguendo* that Plaintiff's motion is not moot, he still has not demonstrated that he would suffer irreparable harm if his motion were denied because Dr. Bruce did not state in his report that the finding of neck tenderness required treatment, but instead recommended a course of treatment consistent with his primary diagnosis of deviated septum and chronic sinusitis.  (*See id.*, Ex. B.)  Because Dr. Bruce provided a diagnosis and course of treatment for Plaintiff, and Plaintiff does not assert in his reply that he was not receiving the recommended treatment, he has failed to demonstrate that irreparable harm would occur if his motion were not granted.

Plaintiff back to Dr. Bruce for the follow up appointment that Dr. Bruce recommended take place after Plaintiff underwent the prescribed course of treatment and had a CAT scan.  (*See* Record document no. 64 at 4.)  Plaintiff claims that, even though he had a CAT scan on September 29, 2008, he had not yet seen Dr. Bruce for a follow up appointment.  (*See id.* ¶¶ 3, 8.)  He also alleges that he was not receiving adequate medical attention for problems he was experiencing with his eyes.  (*See id.* ¶¶ 4-7.)

Defendants attach to their opposition brief a declaration submitted by Dr. Kevin Pigos, Acting Clinical Director at the Allenwood Federal Correctional Complex ("FCC Allenwood").  (*See* Record document no. 65-2 at 2.)  Dr. Pigos is responsible for the medical evaluation and care of inmates in FCC Allenwood, which includes USP Allenwood, the facility where Plaintiff is housed.  (*See id.*)  In his declaration, Dr. Pigos states the following: (1) immediately upon his return from his August 27, 2008 appointment with Dr. Bruce, Plaintiff was prescribed the medications that Dr. Bruce recommended (*see id.* ¶ 5); (2) Plaintiff had a CAT scan on September 28, 2008 pursuant to Dr. Bruce's recommendations (*see id.* ¶ 7); (3) a PA explained the CAT scan results and provided a copy of the results to Plaintiff on December 1, 2008 (*see id.* ¶ 13); and (4) Plaintiff was scheduled to see Dr. Bruce for a follow-up appointment, but the exact date and time of his appointment could not be released to

6

him due to security concerns (*see id.* ¶ 14). Because Plaintiff obtained the relief he was seeking in his motion to expedite in that Defendants scheduled an appointment for him to see Dr. Bruce, his motion will be denied as moot.[3]

## III.    Plaintiff's Motion for Order

In his motion, entitled "Motion for Order for Defendants to Remove the Sclerosis from Plaintiff's Mastoid Aircells and to Bring Plaintiff to a Heart Specialist," Plaintiff requests that this Court help him receive medical attention based on his belief that he is not suffering from sinus problems, but rather "[t]he main pains that Plaintiff is suffering from is [*sic*] in his heart." (*See* Record document no. 67 at 10.)

Plaintiff explains that, at his December 22, 2008 follow-up appointment with

---

[3]To the extent Plaintiff's motion also sought relief with regard to his eye problems, he has failed to establish that failure to grant a preliminary injunction would result in irreparable harm because the record reflects that he received treatment for his eyes.

Plaintiff's motion was dated November 18, 2008. In his declaration dated December 4, 2008, Pigos states that Plaintiff failed to report to his October 22, 2008 appointment with the optometrist that was scheduled after Plaintiff submitted a request on October 10, 2008. (*See* Record document no. 65-2 ¶¶ 9-10.) However, on November 19, 2008, Plaintiff was examined by the institution's optometrist, and on November 26, 2008, he was prescribed steroids to treat his eye inflammation. (*See id.* ¶¶ 11-12.) Plaintiff was scheduled for a follow up appointment at the next monthly eye clinic. (*See id.* ¶12.)

Dr. Bruce, Dr. Bruce told Plaintiff that his sinuses were clear, but "indicated his suspicion that Plaintiff is suffering from headaches due to sinus allergic reaction." (*See id.* ¶ 1.)  He claims that, "the defendants are now preparing to bring Plaintiff, as Dr. Bruce prescribed, back to a Neurologist to see if Plaintiff is suffering from headaches, a medical trip that will be a waist [*sic*] of time and money."  (*See id.* ¶ 13.) Plaintiff opines that a consultation with a neurologist would be a waste of time because he is "convinced beyond a reasonable doubt" that he is not suffering from a sinus allergic reaction as suggested by Dr. Bruce.  (*See id.*)  Rather, he claims that "there is further proof that Plaintiff has a 'Benign tumor' (Sclerosis) in the back of his head", and that Dr. Mitchell, a chief psychologist at USP Allenwood, admitted this to him in 2007, and then later changed his story.  (*See id.* ¶¶ 14-15.)  Plaintiff also alleges that there is reason to believe that he is suffering from heart failure.  (*See id.* ¶ 17.)  He cites his erectile dysfunction, history of crack cocaine abuse, and his parents' heart problems as evidence that he also has heart problems.  (*See id.* ¶¶ 17-19.)

   Plaintiff's motion sets forth new claims that are not asserted against Defendants Ey, Vermeire, DeWald, and Holtzapple.  It is not proper for Plaintiff to attempt to litigate these new claims in this action through the instant motion.  Accordingly, his motion for order (Record document no. 67) will be denied.  Consequently,

**IT IS HEREBY ORDERED THAT:**

1. Plaintiff's motion for preliminary injunction (Record document no. 48) is **DENIED** as moot.

2. Plaintiff's motion to expedite his motion for preliminary injunction (Record document no. 64) is **DENIED** as moot.

3. Plaintiff's motion for order (Record document no. 67) is **DENIED**.

    s/ James F. McClure, Jr.
JAMES F. McCLURE, JR.
United States District Judge